IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FORREST B. ELLIOTT,**

    **Plaintiff,**

vs.                                                      **CASE NO. 4:06CV89-MP/AK**

**BONNIE JONES, et al,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that the Defendants were deliberately indifferent to his safety and medical needs. (Doc. 24). Defendants have moved to dismiss the amended complaint for failure to exhaust administrative remedies (doc. 77), and Plaintiff has responded. (Docs. 79 and 82).

**I.    Allegations of the Amended Complaint (doc. 24)**

Plaintiff alleges that on June 13, 2005, Defendant Bonnie Jones forced him to push a wheelbarrow with a flat tire up a hill causing him to rip his calf muscle. Although Jones called for medical assistance, none came, and she forced him to work for eight more days with a swollen and bloody leg. He also alleges that Jones forced him to walk up three flights of stairs on crutches

Plaintiff alleges that Defendant Rogers forced him to get out of the wheelbarrow, forced him to work with his injury, forced him to walk up and down 3 flights of stairs,

would not change Plaintiff's housing assignment to one without stairs, and did not reprimand Jones, whom Rogers supervised, for her actions.

Plaintiff claims that Defendant Edwards, a nurse at River Junction Work Camp, made him wait a long time before examining him, did not refer him to a physician and did not give him pain medication. He also claims that she did not have him moved to a housing unit without stairs.

Plaintiff claims that Defendant Perkins, a nurse practitioner, examined him, but took his crutches away and refused him a cane or light duty pass, which aggravated his injury and caused him more pain and suffering.

When he was transferred to Apalachee CI, Defendant Odom, a nurse, first placed him a wheelchair, but was deliberately rough with him, and then examined him and refused him a wheelchair back to the dorm causing him to limp back.

a)   <u>Grievance History (exhibits A through C)</u>

**June 17, 2005**: Inmate Request-Leg is turning blue & yellow "still swollen" afer 7 days. Still very painful. Something ripped up good. "Need follow up." Maybe x-ray still dragging leg. Please respond. Haven't been on reac [sic] field for 7 days just bed and work! It should have gotten much better.

**June 20, 2005**: Response-You may consider sick call.

**June 21, 2005**: Informal Grievance-Something bleeding inside leg need follow up never was pulled muscle torn aclu blood-dropping too foot working is very painful. Medical record states follow up as needed "its been needed."

**June 22, 2005**: Request-Improper Format!!

**No. 4:06cv89-MP/AK**

**June 27, 2005**: Informal Grievance: Plaintiff complains that his leg is still swollen with black blood matter on it and although he was told that a doctor would look at his leg that day, it did not happen, nor had he gotten his crutches back or medicine to reduce the pain and swelling.

**June 28, 2005**: Response: Improper Format

**June 28, 2005**: Appeal-Medical emergency: Plaintiff complains that he ripped his leg up working on June 13, 2005, pushing a wheelbarrow with a flat tire and had his crutches taken from him and was told to work despite swollen and bloody looking leg.

**July 7, 2005**: Response: The grievance is not accepted as a grievance of an emergency nature.  Your grievance is in non-compliance with the rules of the Department of Correction, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your grievance at the appropriate level.  You have not done so or you have not provided this office with a copy of that grievance nor have you provided a valid or acceptable reason for not following the rules.

***

Nurse Edwards at River Junction was contacted and she informed the Warden's Office that you are being treated properly and your medical needs are being met.

**July 13, 2005**: Formal Grievance #0507-102-004: Plaintiff complains that the muscle has torn loose and is sticking out on the side of his leg.  He requests an orthopedic doctor.  He also states that his emergency grievance was in compliance in that he had attached 2 informal grievances.

**No. 4:06cv89-MP/AK**

Case 4:06-cv-00089-MP-AK   Document 86   Filed 01/09/08   Page 4 of 10

Page 4 of 10

**July 18, 2005**: Response: Your formal grievance 0507-102-004 was determined not to be of an emergency nature.  When an inmate writes emergency at the top of a grievance it has to be accepted as an emergence or returned stating it is not accepted as an emergency and tell the inmate to file as regular grievance, which we did.

**July 21, 2005**: Appeal: Plaintiff complains that his previous grievances were in compliance, and his leg is swollen with black blood and he is permanently disfigured.

**August 2, 2005**: Response: The appeal was returned without action because Plaintiff wrote outside the boundaries of the space provided on the form.

**August 5, 2005**: Inmate Request: Plaintiff complains that Nurse Perkins will not let him see a doctor and only examined him fully on 8/4/05, but still did not look at the back of his leg.  He requests to be sent to Butler.

**Undated response**: "Ms. Perkins evaluated you on 6/14/6/24, 6/30, and 8/4 and feels your problem is getting better.  If you feel you need to be reassessed please make use of sick call system."

**August 9, 2005**: Appeal: "I am not getting proper medical attention for injury which occurred on 6-13-05 at work.  You have copies of informal grievance #0507-102-004.  Remedy!  I need to see a doctor for proper medical treatment.  RMC -if possible 5" indentation lump on calf."

**August 30, 2005**: Response: "You have been seen numerous times in medical and are receiving proper medical care.  If and when you need an outside consult, one will be scheduled."

**No. 4:06cv89-MP/AK**

**August 14, 2005**: Appeal: Plaintiff complains that his leg still hurts and he was forced to work on crutches and then limp in shackles.

**August 24, 2005**: Response: Appeal was denied without action because he did not file a formal grievance at the institutional level.

    b)    <u>Witness Statements (exhibit D)</u>

    1.  William Walker-saw injured leg on 6/13/05 and that Plaintiff was forced to work on crutches and that the leg was still swollen on 8/4/05.

    2.  Eugene Dambois-saw Plaintiff being pushed in a wheelbarrow on 6/13/05 and that he was sent to work on crutches later and that the leg had a cavity in it and was bloody and swollen on 8/7/05.

    3.  Terry Belvin-saw Defendant Rogers send Plaintiff to work on 6/14/05 on crutches and noted that Plaintiff's leg was swollen and bloody for a long time.

    4.  Greg Wash-saw injured leg with a visible indentation on the calf and saw them take his crutches on 6/14/05 and Plaintiff had to drag his leg around for at least two months.

    5.  Stephen Williamson-saw crutches taken from Plaintiff after he injured his leg and the crutches were given to Raymond Williams who had hurt his knee.

    6.  Raymond Williams-he was sitting in medical with a hurt knee when he saw Officer Macmillan pull the crutches out of Plaintiff's hands and give them to Williams. Plaintiff had to struggle to his feet.

    7.  Johnny McLelland: saw Sgt. Rogers yell at Plaintiff, call him names, and forced Plaintiff to work on crutches on 6/14/05.

**No. 4:06cv89-MP/AK**

8.  Kenny Smith and Roy Garrens-saw condition of Plaintiff's leg on 6/13/05 and it was still swollen on 8/4/05.

9.  Evans Harris-saw injury on 6/13/05 and ordered to climb out on a wall by Sgt. Rogers.

10. Michael Dunn-saw Evans Harris push Plaintiff in a wheelbarrow on 6/13/05 and Plaintiff has trouble walking today (4/27/06).

11. Dennis Carter-received generic Flexeril from Nurse Perkins in March 2006.

## II.  Exhaustion

Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement is mandatory, and may not be waived. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998).   In Alexander, this Court set out seven policies favoring exhaustion: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by

**No. 4:06cv89-MP/AK**

encouraging people to ignore its procedures." Id. at 1327, *quoting* Kobleur v. Group Hospitalization & Medical Services, Inc., 954 F.2d 705, 712 (11th Cir.1992).

The Supreme Court has recently held that the PLRA requires "proper exhaustion," which "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006).

Defendants argue that Plaintiff failed to properly exhaust the grievance system because the June 28, 2005, grievance was deemed not an emergency and returned without action, and the July 18, 2005, grievance was returned without action for writing outside the boundaries of the form.  Plaintiff's August 14, 2005, grievance was returned because no formal grievance was filed at the institutional level.  Thus, Defendants argue that Plaintiff failed to follow the procedural rules of the system, and therefore, did not exhaust his remedies.  Defendants also cite to the August 9, 2005, grievance to the Secretary as not being detailed enough to alert the prison to the claims he brings in this action.

Florida DOC provides a three-level administrative grievance procedure: informal grievance, formal grievance, and an appeal to the Office of the Secretary.  Florida Administrative Code, Rule 33-103.  For medical emergencies, no informal grievance is required and an emergency grievance may be filed "if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate."  Rule 103.002(4).

**No. 4:06cv89-MP/AK**

While the undersigned is cognizant of the body of case law requiring full compliance with procedural rules and the Eleventh Circuit's position that exhaustion is mandatory,[1] in the present case it is the opinion of the undersigned that Plaintiff exhausted the grievance process and the motion to dismiss on this ground should be denied.

Plaintiff filed two informal grievances concerning his leg (June 21 and June 27, 2005), which were returned for "improper format." Presumably, the format was improper because Plaintiff wrote outside the boundaries of the form, but this assumption is made only because no other cause is apparent to the Court. According to the Emergency Grievance on June 28, 2005, Plaintiff was being forced to work with a swollen and bloody leg, and according to the definitions of an emergency grievance, such circumstances should qualify for utilizing this step. See Rule 33-103.002 (4). The response to the emergency grievance dated July 7, 2005, states that it is being returned because it was not submitted at the institutional level first and he had not provided a valid reason for not following the rules. As the Court reads the rules, Plaintiff **was** following the procedures for filing an emergency grievance, which could be filed directly with the reviewing authority (warden or assistant warden), and it was not necessary to file the grievance at the institutional level. Rule 33-103-006(3)(a). Thus, the response was incorrect.

---

[1] In Woodford, supra, the Supreme Court cited with approval the Eleventh Circuit's position that exhaustion is a mandatory provision, no longer left to the discretion of the district court, and that a prisoner must complete the process as the institution requires, including appeals. Id., at 2384.

**No. 4:06cv89-MP/AK**

Further, when the emergency grievance was returned because it was not deemed an emergency, the next step was to file a grievance at the appropriate level, which in a medical situation would be a formal grievance, which he did on July 13, 2005. However, the formal grievance of July 13, 2005, was returned on July 18, 2005, presumably denied on procedural grounds with the instructions: "When an inmate writes emergency at the top of a grievance it has to be accepted as an emergency or returned stating it is not accepted as an emergency and tell the inmate to file as regular grievance, which we did." This denial was appealed on July 21, 2005, in which Plaintiff noted that he was in compliance with the rules in filing his previous grievances (which it appears that he was) and also because his leg was still swollen with black blood. This appeal was denied on August 2, 2005, because Plaintiff wrote outside the boundaries.

From the history cited above, Plaintiff gave fair notice of his claims and provided sufficient detail to the corrections staff to facilitate some relief for his circumstances, if such was warranted. He was not attempting to flout the system or improperly bypass procedural rules, he attempted to seek relief even through the appeals process, although he may, in fact, have been given incorrect or misleading information about the appropriate next step after his emergency grievance was denied. Recognizing that he had, indeed, complied with grievance procedures and was correct in filing a formal grievance after the emergency grievance was denied, he appealed on both procedural and substantive grounds. This is, in the opinion of the undersigned, constitutes an attempt to complete, i.e. exhaust his administrative remedies.

**No. 4:06cv89-MP/AK**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss (doc.77) be **DENIED**, that the Court should find as a matter of law that Plaintiff exhausted administrative remedies as required by 42 U.S.C. §1997(e), and that this cause be **REMANDED** to the undersigned for further proceedings, specifically to order that Defendants file an appropriate response to Plaintiff's amended complaint.

**IN CHAMBERS** at Gainesville, Florida, this  __9th__  day of January, 2008.

                      *s/ A. KORNBLUM*
                      **ALLAN KORNBLUM**
                      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:06cv89-MP/AK**