**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**FORREST B. ELLIOTT,**

      **Plaintiff,**

**vs.**                                      **CASE NO. 4:06CV89-MP/AK**

**BONNIE JONES, et al,**

      **Defendants.**

_____/


## SECOND REPORT AND RECOMMENDATION

      Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that the Defendants were deliberately indifferent to his safety and medical needs. (Doc. 24). Defendants have moved for summary judgment (doc. 112) and Plaintiff has responded. (Doc. 119). As explained below, it is respectfully recommended that Defendant's motion (doc. 112) be **GRANTED**, and that this cause be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2).

**I.**      **Allegations of the Amended Complaint (doc. 24)**

      Plaintiff alleges that on June 13, 2005, Defendant Bonnie Jones forced him to push a wheelbarrow with a flat tire up a hill causing him to rip his calf muscle. Although Jones called for medical assistance, none came, and she forced him to work for eight more days with a swollen and bloody leg. He also alleges that Jones forced him to walk up three flights of stairs on crutches

Plaintiff alleges that Defendant Rogers forced him to get out of the wheelbarrow, forced him to work with his injury, forced him to walk up and down 3 flights of stairs, would not change Plaintiff's housing assignment to one without stairs, and did not reprimand Jones, whom Rogers supervised, for her actions.

Plaintiff claims that Defendant Edwards, a nurse at River Junction Work Camp, made him wait a long time before examining him, did not refer him to a physician and did not give him pain medication. He also claims that she did not have him moved to a housing unit without stairs.

Plaintiff claims that Defendant Perkins, a nurse practitioner, examined him, but took his crutches away and refused him a cane or light duty pass, which aggravated his injury and caused him more pain and suffering.

When he was transferred to Apalachee CI, Defendant Odom, a nurse, first placed him a wheelchair, but was deliberately rough with him, and then examined him and refused him a wheelchair back to the dorm causing him to limp back.

a)     Grievance History (exhibits A through C)

These exhibits are not relevant to the substantive claims and will not be repeated herein since the Court has already ruled that Plaintiff has exhausted administrative remedies. (See Docs. 86 and 89).

b)     Witness Statements (exhibit D)

1. William Walker-saw injured leg on 6/13/05 and that Plaintiff was forced to work on crutches and that the leg was still swollen on 8/4/05.

**No. 4:06cv89-MP/AK**

2.  Eugene Dambois-saw Plaintiff being pushed in a wheelbarrow on 6/13/05 and that he was sent to work on crutches later and that the leg had a cavity in it and was bloody and swollen on 8/7/05.

3.  Terry Belvin-saw Defendant Rogers send Plaintiff to work on 6/14/05 on crutches and noted that Plaintiff's leg was swollen and bloody for a long time.

4.  Greg Wash-saw injured leg with a visible indentation on the calf and saw them take his crutches on 6/14/05 and Plaintiff had to drag his leg around for at least two months.

5.  Stephen Williamson-saw crutches taken from Plaintiff after he injured his leg and the crutches were given to Raymond Williams who had hurt his knee.

6.  Raymond Williams-he was sitting in medical with a hurt knee when he saw Officer Macmillan pull the crutches out of Plaintiff's hands and give them to Williams. Plaintiff had to struggle to his feet.

7.  Johnny McLelland: saw Sgt. Rogers yell at Plaintiff, call him names, and forced Plaintiff to work on crutches on 6/14/05.

8.  Kenny Smith and Roy Garrens-saw condition of Plaintiff's leg on 6/13/05 and it was still swollen on 8/4/05.

9.  Evans Harris-saw injury on 6/13/05 and ordered to climb out on a wall by Sgt. Rogers.

10. Michael Dunn-saw Evans Harris push Plaintiff in a wheelbarrow on 6/13/05 and Plaintiff has trouble walking today (4/27/06).

11. Dennis Carter-received generic Flexeril from Nurse Perkins in March 2006.


**No. 4:06cv89-MP/AK**

**II.     Standard of Review**

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v.

**No. 4:06cv89-MP/AK**

<u>Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

**III.   Defendants' Rule 56(e) evidence**

   a)   <u>Inmate Information Detail (doc. 112-exhibit A)</u>

Plaintiff was 50 years old at the time of the injury and was released from custody on August 24, 2006.

   b)   <u>Affidavit of Defendant Bonnie Jones (exhibit B)</u>

Ms. Jones is a correctional officer working at River Junction Work Camp for 12 years. She attests that on June 13, 2005, she had assigned plaintiff the task of shoveling dirt out of gutters to fill holes on the grounds. The wheelbarrow given to him to perform this task did not have a flat tire, she would not given him a wheelbarrow with a flat tire, and he did not tell her it had a flat tire. At 9:05 that morning, Plaintiff told Jones that he pulled a muscle in his right leg pushing the wheelbarrow and declared a medical emergency. Jones attests that he did not tell her he could not walk nor did he

**No. 4:06cv89-MP/AK**

request a wheelchair. Jones called medical and went back to supervising the other inmates. She never saw Plaintiff being pushed in a wheelbarrow by another inmate and would not have permitted this. Inmates who have no call-out or medical pass must work. If Plaintiff had shown up for work on crutches, she would have called medical to verify whether he was meant to have a lay-in or another appointment and responded accordingly. She never threatened Plaintiff, forced him to work with crutches, or curse him.

Incident Report dated June 13, 2005, states that "Inmate was pushing a wheelbarrow of dirt and said that he pulled a muscle in right leg." He was referred for medical treatment.

      c)      <u>Affidavit of Robert Rogers (exhibit C)</u>

Mr. Rogers is a correctional officer who has worked at River Junction Work Camp for 20 years. On June 13, 2005, he saw Plaintiff being pushed in a wheelbarrow by another inmate and stopped them. Plaintiff said he could not walk, so Rogers called for a wheelchair and he personally helped Plaintiff into it and escorted him to medical. There were no words or cursing or yelling during this incident. Rogers does not supervise Defendant Jones and does not assign inmates to particular dorms, the shift officer in charge would make any such assignments, but he was not aware the Plaintiff had requested that he be moved from B dorm to E dorm. Again, an inmate must work unless he has a medical lay-in or call out.

      d)      <u>Affidavit of Glynda Edwards (exhibit D)</u>

**No. 4:06cv89-MP/AK**

Edwards is a registered nurse employed at River Junction Work Camp for 8 years. She examined Plaintiff the morning of June 13, 2005, and found that the right calf was not red, tight or warm, but Plaintiff complained that it was painful to the touch and he could not put his weight on it. He told her he was pushing a wheelbarrow up a hill with a flat tire and hit some wet mud when he injured his leg. She diagnosed a strained calf muscle, not a sprain, and provided him with an analgesic balm and Tylenol. She called Lisa Perkins, ARNP, to get approval of her decision, and they discussed placing him on bed rest and crutches for one day with a followup visit the next morning with Perkins. She next saw Plaintiff on June 21, 2005, when he declared a medical emergency and presented with blackness and pain in his right foot. She observed swelling, tenderness, and a bruise to his shin that was the size of half dollar. She did not think this was related to the calf strain of a week prior, and called ARNP Peel at ACI (because ARNP Perkins and ARNP Parker were unavailable) to consult with him before providing treatment. Peel suggested a bed rest lay-in for 2 or 3 days until ARNP Perkins could see him on June 24, 2005.

Treatment notes support the facts alleged in the affidavit.

e)      Affidavit of Lisa Perkins (exhibit E)

During the relevant time period, Perkins was an Advanced Registered Nurse Practitioner at River Junction Work Camp. She examined Plaintiff on June 14, 2005, and recalled that he told her he strained his leg pushing a lawnmower. She found some muscle tension in the right calf, but no cuts or bruises and prescribed ibuprofen and no follow up treatment because she felt none was necessary. She does not recall him

**No. 4:06cv89-MP/AK**

requesting crutches, but they were not necessary after the first day of injury. She examined him again on June 24, 2005, for pain, bruising and swelling to his right foot and ankle. She did not notice a shin injury and assessed that the muscle strain or tear to the right calf had drained fluid into his foot. She gave him medication to reduce swelling and acetaminophen. She does not recall him asking for a bed rest lay in or light duty pass, but he did not need these. Also, his allegations that she was going to refer him to Nurse Edwards for these things is not true as she would have issued these passes, it would be unnecessary for him to see Ms. Edwards. By June 30, 2005, he reported feeling better, there was less bruising with full range of motion. She assessed a muscle tear, no follow up treatment was needed, and told him to continue taking over the counter ibuprofen as needed.

Treatment notes support the affidavit.

f)    Affidavit of Florie Odom (exhibit F)

Odom is a Senior Registered Nurse at Apalachee CI and recalls that on June 20, 2005, Plaintiff was transferred to her medical unit because there are no staff at the medical department after non-business hours. She was told by staff at River Junction that plaintiff could not walk so she met him with a wheelchair. He was in shackles per policy for transport at night. She saw him step out of the transport van and walk to the wheelchair, and she pushed him to medical. She did not run him into potholes or walls and doors. She saw that his right foot was swollen and bruised, but there was no blood dripping on the outside of his skin and there was no cut. She thought the swelling was related to the previous strain and fluid was draining into the foot and ankle area. He

**No. 4:06cv89-MP/AK**

was already being prescribed pain medication and she believed his condition was a non-emergency that did not require immediate attention. She did not allow him use of a wheelchair for his return because she did not believe he needed it.

      g)     <u>Affidavit of Frank Johanson (exhibit G)</u>

Johanson is the Clinical deputy Director with the DOC and he has reviewed Plaintiff's medical records pertaining to the treatment of his right leg injury. In his professional opinion Plaintiff received appropriate and timely treatment for what was either a strain or minor tear to his right calf muscle. He was treated within twenty minutes of his initial injury and at no time did the injury pose a risk to his health. In general, a strain or tear, while painful, does not require treatment and will over time heal without medical attention. At all times he could put weight on his leg indicating that he had not torn his calf muscle completely, which would have immobilized the leg. Fluid builds up around a strain or tear and can cause swelling from the calf down to the foot and ankle as it drains. Medication can be provided to reduce the symptoms and ease the discomfort, but there is no treatment to facilitate the actual healing of the tear or strain.

## IV.   Plaintiff's Response (doc. 119)

Plaintiff argues that an FDLE investigation of other unrelated matters kept Defendants from attending to him correctly and realleges his claims that he was forced to work and hop up three flights of stairs with a "ripped muscle evidenced by a large blood hematoma."

**No. 4:06cv89-MP/AK**

He refers the Court to evidence he attempted to file previously. As the Court noted in an Order dated September 19, 2008, discovery "evidence" cannot simply be filed for consideration, but must be attached in support of his response. (See Doc. 118). No evidentiary materials were submitted with Plaintiff's response.

The witness statements submitted with the amended complaint (doc. 24) have no evidentiary value because they are not sworn statements.

## V.    Analysis

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001).  The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).  This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency."  Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).  An objectively serious deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  A serious medical need is considered "one that has been

**No. 4:06cv89-MP/AK**

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003), quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837. In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

Plaintiff fails on all four requirements: he had an injury that required no medical treatment, although he received medical attention within minutes of the injury and upon

No. 4:06cv89-MP/AK

each and every medical emergency he declared, and there is nothing in the treatment notes that would indicate a need for treatment other than what he received.

Plaintiff has also made serious misrepresentations of fact and false allegations of misconduct in his amended complaint which the Court would certify to the DOC for disciplinary action were Plaintiff still incarcerated[1].

Plaintiff describes his injury as "bloody and swollen," "swollen the size of a football," a "blood hematoma covering my calf down to my toes," causing him to limp and drag his leg around, yet none of the treatment notes describe any of this. His leg was not red or swollen or even warm when it was examined shortly after the injury occurred. The nurse noted muscle tension in the right calf. Later notes described a bruise about the size of a half dollar on his shin, not covering the entire back of his leg to his toes. When he was treated on June 20, 2005, his right foot was swollen with bruising from his ankle to his foot, but he was told his condition did not constitute an

---

[1] Florida Statute §944.279(1) provides for the following sanctions when a prisoner is found to have brought a malicious suit involving false information:
At any time, and upon its own motion or on motion of a party, a court may conduct an inquiry into whether any action or appeal brought by a prisoner was brought in good faith. A prisoner who is found by a court to have brought a frivolous or malicious suit, action, claim, proceeding, or appeal in any court of this state or in any federal court, which is filed after June 30, 1996, or to have brought a frivolous or malicious collateral criminal proceeding, which is filed after September 30, 2004, or who knowingly or with reckless disregard for the truth brought false information or evidence before the court, is subject to disciplinary procedures pursuant to the rules of the Department of Corrections. The court shall issue a written finding and direct that a certified copy be forwarded to the appropriate institution or facility for disciplinary procedures pursuant to the rules of the department as provided in s. 944.09.

**No. 4:06cv89-MP/AK**

emergency and to use sick call. Thus, Plaintiff has misrepresented the nature of the injury to present a serious need, when there was none.

Further, Plaintiff represented that he was forced to work for 8 days with his leg bloody, swollen, limping and dragging behind him, implying that he had received no medical treatment. Treatment notes from three different medical staff show that he was treated within twenty minutes of the injury and that there was no outward cut or abrasion from which blood would be dripping causing his leg to be "bloody."

He represents that he was forced to work with these obvious infirmities and forced to wait a "long" time to be treated, but the treatment notes show he went straight to medical after declaring his first medical emergency, and that he declared no other medical emergency until 8 days later when he was again treated without delay. Even when he declared a medical emergency after hours, he was taken to the main unit for treatment within the hour where it was noted that his right foot and ankle were swollen, but there was no blood apparent on the outside of the skin, he could step out of the transport van and walk, and he was sent back with the notation "not true emergency."

It is obvious that Plaintiff was not afraid to declare a medical emergency, even where there was none, so it is not likely that he would endure days of working in extreme pain, dragging his leg, hopping painfully up three flights of stairs several times a day, and not complain loudly at least to the medical staff during his examinations or make repeated requests for lay-ins, a dorm change, or crutches. Yet, even under these circumstances he reported feeling much better by June 30, and the bruising was almost gone.

The medical director has reviewed the treatment history and determined that the injury, while painful, was a strain or minor muscle tear that would have healed without any treatment, but medication was prescribed to alleviate his discomfort.

Offering no evidence to the contrary, Plaintiff offers his argument that that there was some unrelated investigation going on in the DOC that caused medical personnel, most of whom have worked for River Junction for many years, to disregard their medical training, ignore their medical oaths, risk their jobs, and for no reason articulated by Plaintiff, single him out for abuse, neglect, and mistreatment.

No reasonable jury could find for Plaintiff under such facts, and therefore, summary judgment should be entered in Defendants' favor.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion (doc. 112) be **GRANTED**, and this cause **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and shall constitute a "strike" within the meaning of 28 U.S.C. §1915(g).

**IN CHAMBERS** at Gainesville, Florida, this _1st_ day of September, 2009.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.